IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02976-CMA-NYW

WANIKA HOWELL,

   Plaintiff,

v.

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON,

   Defendant.

---

## ORDER ON MOTION REQUESTING DISCOVERY

Magistrate Judge Nina Y. Wang

This civil action comes before the court on Plaintiff Wanika Howell's "Motion Requesting Discovery and Objection to Submission of Administrative Record" ("Motion for Discovery"), [#27, filed April 16, 2018]. The Motion for Discovery was referred to the undersigned Magistrate Judge pursuant to the Order Referring Case dated January 29, 2018 [#17] and the memorandum dated April 17, 2018 [#28]. The court has reviewed the Motion for Discovery, the associated briefing, the case file, and the applicable law, and, for the reasons stated below, **GRANTS IN PART and DENIES IN PART** the Motion.

### BACKGROUND

On December 12, 2017, Plaintiff Wanika Howell ("Plaintiff" or "Ms. Howell") initiated this action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, seeking accidental death benefits related to the death of her son, Joel McClain, Jr., who was killed when his motorcycle was struck by a

car attempting to make a left-hand turn at the intersection Mr. McClain was passing through. *See* [#1 at 2]. Prior to the accident, Plaintiff had purchased an Accidental Death and Dismemberment Policy (the "Policy"), through her employer, from Defendant Liberty Life Assurance Company of Boston ("Defendant"). The Policy provided a death benefit of $500,000 and identified Mr. McClain as the insured party and Plaintiff as the beneficiary. Plaintiff submitted a claim for the $500,000 death benefit following the death of her son. Defendant investigated the facts giving rise to the accident, which included speaking with the officer who investigated the accident, Detective Ferrucci. [#34 at 4]. Defendant subsequently denied the claim on the basis of an exclusion in the Policy, which provides that no benefits are payable for a loss that is "contributed to or caused by…committing or attempting to commit a felony or misdemeanor." [*Id.* at 3 (citing #1-6)].[1] In support of its application of the exclusion, Defendant stated that Detective Ferrucci "verbally confirmed that if Mr. McClain had survived the collision, he would have been charged with reckless driving…," which, in the State of New York, is classified as a misdemeanor. [*Id.* at 3]. Defendant further stated that it had:

> determined that Mr. McClain subjectively expected serious injury or death to occur as a result of driving at excessive speeds…our determination is supported by the facts of this claim, mainly the investigating detectives statement [sic] that he would have charged Mr. McClain with a misdemeanor traffic violation of reckless driving had he survived the crash…Based on these determinations, no accidental injury occurred and the AD&D benefits are not payable.

[*Id.* at 3-4].

---

[1] Defendant also cited portions of the Policy stating that coverage applied only to "accidental injury," or that which is not intended by the participant. By the filing of the Motion for Discovery, however, the Parties agreed that this exclusion is no longer considered a basis for the denial. [#27 at 4-5 ("Since the initiation of these proceedings, counsel have agreed that there is no basis to contend that the intentional act exclusion would apply in the context of this fatal left turn case.")].

2

Plaintiff alleges in her Complaint that she "corresponded with the Defendant in an effort to protest and appeal the company's denial of benefits," but that Defendant upheld its denial of the Policy benefit, "again stating that the investigating officer would have charged Mr. McClain with reckless driving had he survived, and that 'no additional information was submitted on appeal to suggest that Mr. McClain would not have been charged. In the State of New York, reckless driving is a misdemeanor.'" [#1 at 5 (citing #1-2)]. Plaintiff asserts one claim for breach of contract under ERISA section 502(a), 29 U.S.C. § 1132(a)(1)(B).

Defendant filed an Answer on January 23, 2018, and an Amended Answer on January 25, 2018. [#10; #14]. On February 2, 2018, this court entered a Scheduling Order setting certain pretrial dates and deadlines, including a deadline of April 15, 2018 by which to file the Administrative Record, and a deadline of August 1, 2018 by which to file Opening Briefs. [#22]. Defendant thereafter filed the Administrative Record. [#26].

On April 16, 2018, Plaintiff filed the Motion for Discovery, in which she asserts that her counsel spoke with Detective Ferrucci, who stated that it was only a possibility that he would have charged Mr. McClain with reckless driving had Mr. McClain survived the accident, and that he "would need more information to address that type of decision." [#27 at 4]. Plaintiff asserts that Detective Ferrucci also represented that in his prior communication with Defendant, he had "stated that charging Mr. McClain with reckless driving was only a possibility had he survived" [*id.*], and agreed "that a confirming letter could be sent to the effect that he would need more information to make a charging decision," which information Plaintiff's counsel relayed to counsel for Defendant in a letter dated April 13, 2018. [*Id.* (citing #27-4)]. Plaintiff asks the court to

permit discovery to allow the deposition of Detective Ferrucci and of "a company representative to address bias and prejudice as it may affect the standard of review." [*Id.* at 10]. Plaintiff also argues that this discovery is permissible because the court should engage in a de novo review. [#27 at 9 (citing Colo. Rev. Stat. § 10-3-1115)].

On May 14, 2018, Defendant filed a Response to the Motion, arguing that an arbitrary and capricious standard of review applies to the plan administrator's decision, ERISA preempts any state statutory authority to the contrary, and evidence in ERISA cases is typically limited to the administrative record. [#34 at 2]. Defendant further argues that "Plaintiff was afforded a full and fair opportunity to appeal the initial claim determination, during which she had the opportunity and obligation to submit for Liberty's consideration and review the precise evidence she now seeks in discovery." [*Id.*] And that, in appealing the denial of benefits, while Plaintiff disagreed with the witnesses at the scene of the accident and argued that "it was never proven beyond a reasonable doubt" that her son "was involved in reckless driving causing the accident," she did not disagree with Defendant's recitation of Detective Ferrucci's comments or describe her difficulty in contacting Detective Ferrucci. [#34 at 5]. Additionally, Defendant contends, Plaintiff did not provide contradictory comments or information from Detective Ferrucci or ask for additional time to complete her appeal, nor did she ask Defendant to speak again with Detective Ferrucci. [*Id.*]

In her Reply, Plaintiff asserts that because "Defendant did not obtain any type of independent accident assessment or even address the facts of the accident itself, but based its decision on a Police Officer's potential charging decision," the "circumstances…involve an insurer with an inherent conflict of interest, which must be

4

scrutinized given the direct financial interest of the administrator/insurer." [#40 at 5]. Defendant thereafter sought and received leave to file a Surreply, [#41; #43; #44], in which it contends that Plaintiff misapplies case law in her efforts to secure a de novo review, and that "[w]hen an ERISA policy grants discretion to the administrator to determine eligibility for benefits or construe the policy terms (as it does here), any conflict of interest 'should be weighed as a factor in determining whether there is an abuse of discretion.'" [#44 at 1 (citing *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008))]. Defendant also contends that Plaintiff's disagreement with the claim determination "is not a basis to conduct discovery outside the administrative record – especially where Plaintiff failed to argue that the information she seeks in discovery could not have been provided to Liberty as part of the administrative process." [*Id.* at 3].

**ANALYSIS**

Plaintiff's chief contention is that Detective Ferrucci's comments, regarding whether he would have charged Mr. McClain with reckless driving had Mr. McClain survived the accident, are misrepresented in the Administrative Record, and thus give rise to a factual "disparity between what is recorded by the claims adjuster," and what Detective Ferrucci determined following his investigation. [#27 at 5]. Plaintiff therefore wishes to depose both Detective Ferrucci, regarding his charging determination, and a representative of Defendant, regarding how the claims adjustor may have been biased and/or prejudiced, and to amend the Administrative Record by adding such testimony. Defendant asserts that the court should utilize an arbitrary and capricious standard of review of the administrator's decision and deny Plaintiff's request to take what it

5

contends is merits-based discovery. This court addresses first the Parties' dispute regarding which standard of review is appropriate.

I.     **Standard of Review**

In support of her position that a de novo review is appropriate, Plaintiff cites Colo. Rev. Stat. 10-3-1115. [#27 at 9]. Defendant argues in response that section 10-3-1115 does not provide a basis for applying a de novo review, and that to the extent Plaintiff means to rely on Colo. Rev. Stat. § 10-3-1116(3), "any alleged statutory right to de novo review or a jury trial," provided under that statute is preempted by ERISA. [#34 at 2]. Defendant states simply that "Plaintiff's argument ignores District of Colorado precedent clearly holding that 'the part of Colo. Rev. Stat. § 10–3–1116(3) providing for a jury trial conflicts with ERISA's remedial structure by altering the judiciary's role. Thus…ERISA preempts, in its entirety, Colo. Rev. Stat. § 10–3–1116(3).'" [#44 at 4].

Subsection 10-3-1116(3) provides that:

> [a]n insurance policy, insurance contract, or plan that is issued in this state shall provide that a person who claims health, life, or disability benefits, whose claim has been denied in whole or in part, and who has exhausted his or her administrative remedies shall be entitled to have his or her claim reviewed de novo in any court with jurisdiction and to a trial by jury.

Colo. Rev. Stat. § 10-3-111(6). Defendant relies on *Shafer v. Metro. Life Ins. Co.*, 80 F. Supp. 3d 1244, 1256-57 (D. Colo. 2015), which reaches the conclusion that ERISA preempts subsection 10-3-1116(3). *Id.* (noting that the de novo standard of review contained in the subsection does not conflict with the remedial scheme of ERISA, but concluding that the jury trial provision conflicts with the equitable nature of an action under section 1132(a), and that the court was not authorized to sever a portion of a subsection). However, Defendant curiously omits discussion of *Kohut v. Hartford Life*

6

*and Accident Ins. Co.*, 710 F. Supp. 2d 1139 (D. Colo. 2008), the published opinion issued by the presiding judge in this matter, the Honorable Christine M. Arguello, in which the court found that subsection 1116(3) is *not* preempted by ERISA.[2] *Id.* at 1148-49 ("the Court finds that section 10–3–1116 is a law 'regulat[ing] insurance' within the meaning of section 1144(b)(2)(A), and that it therefore is saved from preemption by ERISA."). *See Flowers v. Life Ins. Co. of North America*, 781 F. Supp. 2d 1127, 1132 (D. Colo. 2011) (specifying that *Kohut* applied to subsections 1116(2) and (3)). *Cf. Shafer*, 80 F. Supp. 3d at 1257 (noting that it "does not find [*Kohut*] on point as in that case there was no discussion as to whether conflict preemption principles applied, specifically whether the right to a jury trial conflicts with ERISA's remedial structure.").

The Tenth Circuit has not yet weighed in on this particular question of preemption, although it has concluded "that the Seventh Amendment guarantees no right to a jury trial in a § 1132(a)(1)(B) action for benefits." *Graham v. Hartford Life & Accident Ins. Co.*, 589 F.3d 1345, 1355 (10th Cir. 2009). *Cf. Meardon v. Freedom Life Ins. Co. of America*, 417 P.3d 929, 936 (Colo. App. 2018) (Bernard, J., dissenting) (noting that whether ERISA preempts subsection 1116(3)'s jury trial right is an "open question," and opining that subsection 1116(3) "was designed to avoid the federal prohibition of jury trials," and gives "an insured a right to a jury trial *in state court* when he or she filed a claim under subsection 1116(1))") (citation omitted) (emphasis added). As discussed below, the applicable standard of review affects the factors to be

---

[2] This court notes that Defendant cites *Kohut* in its Response, but for the proposition that "[t]he Supreme Court and Tenth Circuit have held that the standard of review remains 'abuse of discretion' regardless of the existence of or weight given to the alleged conflict." [#34 at 7].

considered by the court in evaluating whether extra-record discovery should be permitted.

**II.    Scope of Permissible Discovery**

    **A.    Arbitrary and Capricious Review**

It is unisputed that Defendant both insured and administered the plan under which Plaintiff's Policy was issued, and also investigated Plaintiff's claim. *See, e.g.,* [#1-1; #34 at 6-7; #40 at 4].  Accordingly, Defendant engaged in a dual role.  The Supreme Court observed in *Metropolitan Life Insurance Co. v. Glenn*, that a dual role in which an insurer "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket...creates a conflict of interest." 554 U.S. 105, 128 S.Ct. 2343, 2346 (2008).  This court thus recognizes the potential that Defendant has a dual role conflict of interest. Placing aside the preemption issue, the Tenth Circuit holds that where the plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the court reviews the administrator's decision for an abuse of discretion.  *Murphy,* 619 F.3d at 1157 (citations omitted); *see Weber v. GE Group Life Assurance Co.*, 541 F.3d 1002, 1011 (10th Cir. 2008) (describing terms "arbitrary and capricious" and "abuse of discretion" as interchangeable in this context).  And, in *Glenn*, the Supreme Court held that the presence of a dual role conflict does not alter the level of deference accorded to an administrator's decision.  *Id.* at 2350-52.  But for the issue regarding preemption, this court utilizes an arbitrary and capricious standard of review.  *See id.*

Generally, "in reviewing a plan administrator's decision under the arbitrary and capricious standard, the federal courts are limited to the administrative record." *Murphy,*

619 F.3d at 1157 (citations omitted). And Rule 26 of the Federal Rules of Civil Procedure applies to define the scope of permissible discovery in ERISA matters. Rule 26 permits discovery into "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). *See* Rule 26 Advisory Committee Notes (2015) (noting that the former provision authorizing "discovery of relevant but inadmissible information that appears 'reasonably calculated to lead to the discovery of admissible evidence'" was deleted due to misinterpretation by parties and courts alike, and instructing that "discovery of nonprivileged information not admissible in evidence remains available so long as it is otherwise within the scope of discovery."). Considering its directive limiting courts to the administrative record in ERISA cases, and the general scope of discovery as articulated in Rule 26, the Tenth Circuit has explained that in ERISA matters, "extra-record discovery would generally seem inappropriate." *Murphy*, 619 F.3d at 1157.

That extra-record discovery is improper is especially true where the plaintiff seeks to supplement the administrative record with substantive evidence regarding the administrator's decision concerning the disbursement of benefits. *Murphy*, 619 F.3d at 1158-59 (citing *Woolsey v. Marion Laboratories,* 934 F.2d 1452, 1460 (10th Cir. 1991) ("[i]n determining whether the decision was supported by substantial evidence, we consider only the facts before the Administrators at the time of their decision")). In such a situation, "a general prohibition on extra-record supplementation makes sense," because "[b]oth a plan participant and an administrator have a fair opportunity to include in the record materials related to the participant's eligibility for benefits." *Id.* at 1159 (citing *Sandoval v. Aetna Life & Casualty Insurance Co.,* 967 F.2d 377, 380–81 (10th

9

Cir. 1992) ("If a plan participant fails to bring evidence to the attention of the administrator, the participant cannot complain of the administrator's failure to consider this evidence."). Indeed, given the policy considerations underlying ERISA, i.e., to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously, *Sandoval*, 967 F.2d at 380 (citation omitted), the courts would both "prolong the decision making process and inject greater uncertainty" into that process were they allowed to reach beyond the limited scope of review and routinely consider materials outside of the record. *Murphy*, 619 F.3d at 1159.

However, under the guidance of the Supreme Court's ruling in *Metropolitan Life Insurance Co. v. Glenn*, instructing that the district court must weigh a conflict of interest in the abuse of discretion analysis and allocate the conflict more or less weight depending on the circumstances, it is possible that "without discovery, a claimant may not have access to the information necessary to establish the seriousness of the conflict." *Murphy*, 619 F.3d at 1157-58. And thus, the Tenth Circuit has recognized that a district court "may permit extra-record discovery related to a dual role conflict of interest." *Id.* at 1160 (citing *Wolberg v. AT & T Broadband Pension Plan,* 123 F. App'x 840 (10th Cir. 2005)). *See Paul v. Hartford Life and Accident Ins. Co.,* No. 08–cv–00890, 2008 WL 2945607, *2 (D. Colo. July 28, 2008) (concluding that "while it would not be proper to allow Plaintiff to conduct discovery directed to the factual merits of his claim," the court would permit "limited discovery related to the alleged conflict of interest in this case and to the policies and procedures used by [the administrator] to make its decision"); *Kohut*, 710 F. Supp. 2d at 1150–53 (interpreting Tenth Circuit law pre-*Glenn* to permit discovery related to the seriousness of a conflict of interest); *Bottoms v.*

*Liberty Life Assurance Co. of Boston*, No. 11–cv–01606–PAB–CBS, 2011 WL 6181423, *8 (D. Colo. Dec. 13, 2011) (permitting plaintiff "with appropriate limitations, to conduct discovery directed to the *procedures* employed by [defendant] in compiling the administrative record and reaching its decision to end Plaintiff's LTD benefits," and "permit[ting] Plaintiff to serve discovery requests directed to the dual role conflict of interest confronting [defendant] and its employees.") (emphasis in original); *Baty v. Metropolitan Life Ins. Co.*, Case No. 17-1200-EFM-GEB, 2017 WL 4516825, *4 (D. Kan. Oct. 10, 2017) (allowing limited extra-record discovery for plaintiff "to demonstrate the alleged seriousness of the conflict between Defendant's role as the insurer and its role as the administrator of the Plan.").

## B.     De Novo Review

The court applies a de novo standard of review to decisions made under benefit plans that do not expressly provide the administrator discretionary authority to determine eligibility for benefits or to construe the plan's terms. *Firestone Tire and Rubber Co v. Bruch*, 489 U.S. 101, 109 S. Ct. 948 (1989). The inquiry into whether extra-record evidence is appropriate under a de novo standard of review is slightly different because there is typically little to no concern regarding a potential conflict of interest. Where the company that funds the plan employs a separate company to evaluate claims, "any conflict of interest is more attenuated than in other ERISA cases, and the rationale for considering extra-record evidence of bias…is diminished." *Williams v. Metropolitan Life Ins. Co.*, 459 F. App'x 719 (10th Cir. 2012). *But see Glenn,* 554 U.S. at 112, 114, 128 S.Ct. 2343 (noting the conflict may persist even when the employer delegates duties for claims administration). A court evaluating

whether to permit discovery where a de novo standard of review applies typically must satisfy itself as to a four-part test: (1) is the evidence "necessary to the district court's review"; (2) was the plaintiff unable to present the evidence during the administrative process; (3) is the evidence cumulative and repetitive; and (4) is the newly offered evidence "simply better evidence." *Jewell v. Life Ins. Co. of N. Am.,* 508 F.3d 1303, 1309, 1311-1315 (10th Cir. 2007) (quoting *Hall v. UNUM Life Insurance Co. of America,* 300 F.3d 1197, 1203 (10th Cir. 2002)). This court notes that neither Party addressed the *Hall* factors articulated in *Jewel*, despite the fact that Plaintiff advocates for a de novo standard of review.

### C. Applicable Standard of Review and Resulting Discovery

Based on the record before it, this court finds that Plaintiff has identified a potential conflict of interest that may have materially affected Defendant's adjudication of Plaintiff's claim for benefits. While this court notes that it is solely within Judge Arguello's province to determine whether to apply a de novo or arbitrary and capricious standard of review to the plan administrator's decision,[3] this court finds that limited discovery is appropriate to allow Plaintiff to seek evidence with respect to the issue of whether the existence of a conflict of interest jeopardized Defendant's decision-making process. Such limited discovery preserves the issue of the appropriate standard of review for Judge Arguello and also facilitates progress on this case without further

---

[3] This court also notes that the Parties' briefing on the matter of preemption is far from robust, and it is not the court's role to supply legal support for either Party's position. *See, e.g., O'Dowd v. Anthem, Inc.*, No. 14–cv–02787–KLM, 2016 WL 9735772, *5 (D. Colo. Sept. 23, 2016) ("the Court will not supply arguments for the parties, particularly on a preemption analysis") (citing *David P. Coldesina, D.D.S. v. Estate of Simper*, 407 F.3d 1126, 1135 (10th Cir. 2005) ("[A]ny court forced to enter the ERISA preemption thicket sets out on a treacherous path[.]").

12

delay.[4]  *See Murphy*, 619 F.3d at 1159 n.4 (remarking that even on a de novo review, extra-record evidence may be appropriate "to enable the court to understand and evaluate the decision under review") (citing *Jewell v. Life Ins. Co. of N. Am.,* 508 F.3d 1303, 1309 (10th Cir. 2007).  But as discussed in detail below, this court does not agree that an open-ended deposition of Detective Ferrucci and Defendant's adjuster is appropriate.

### III. The Nature of the Dual Role Conflict of Interest

Plaintiff takes issue with the claim adjuster's reliance on Detective Ferrucci's comments that he would have charged Mr. McClain with reckless driving.  In a letter dated June 1, 2017, Defendant denied Plaintiff's claim, citing in relevant part the comments of Detective Ferrucci that "had Mr. McClain survived the crash…he would have been charged with reckless driving."  [#27-6 at 2].  On July 26, 2017, Plaintiff responded to Defendant's letter, essentially initiating the appeals process, [#27-1], and on September 5, 2017, Defendant upheld the denial, stating in relevant part that "[n]o additional information was submitted on appeal to suggest that Mr. McClain would not have been charged [with reckless driving]."  [#27-2 at 3].  On October 23, 2017, counsel for Plaintiff contacted Detective Ferrucci asking to speak with him about the "potential charges…Mr. McClain would have faced had he survived…"  [#27-3].  Counsel for

---

[4] This court notes that in support of her position that a de novo standard of review applies, Plaintiff also asserts that Defendant essentially rendered a legal determination in "applying a charging decision as the basis to deny an insurance claim."  [#40 at 8]. Plaintiff relies on a lone case, from the Fifth Circuit, *Penn v. Howe-Baker Engineers, Inc.*, 898 F.2d 1096 (5th Cir. 1990), which Defendant in its Surreply asserts was subsequently rejected by *Ariana M. v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246, 247 (5th Cir. 2018).  [#44 at 3].  For the same reasons expressed with its discussion of the preemption issue, this court declines at this time to conclude which standard of review is appropriate here.

Plaintiff represents that despite attempts to contact Detective Ferrucci, he was unable to speak with him until April 13, 2018. *See* [#27-4 at 1]. In a letter dated the same day, counsel for Plaintiff wrote counsel for Defendant and described his conversation with Detective Ferrucci as follows:

> According to the detective, he never did state that Mr. McClain would have been charged with reckless driving under these circumstances. He indicated that, apparently, there was a discussion with the insurance adjustor on this topic, although he actually told the adjuster that charging Mr. McClain with reckless driving was a possibility, and he would not definitively state that Mr. McCLain would have been charged under the circumstances. He agreed that further information would be necessary to make that type of decision…The detective stated that he was clear in stating to the adjuster that charges for reckless driving were only a possibility here, and that the police department would not, as a general rule, issue charges against someone without at least talking to them first, and getting that person's side of the circumstances.

[#27-4 at 1]. Although Plaintiff's counsel did not submit Detective Ferrucci's declaration or affidavit, the court accepts counsel's statements in the April 13, 2018 letter and within the Motion for Discovery as representations of an officer of the court.[5] The court finds that the discrepancy between the claim adjuster's representation of Detective Ferrucci's statements and Detective Ferrucci's recollection of those same statements is sufficient to permit Plaintiff to take limited discovery into the scope of the dual role conflict of interest, particularly in light of the fact that the charge of reckless driving is the sole basis on which Defendant denied Plaintiff's claim.[6] Indeed, Plaintiff argues in her

---

[5] To the extent Plaintiff's counsel has misrepresented Detective Ferrucci's remarks in an effort to obtain the requested depositions, this court is confident that Defendant will raise any such issue with the court, if appropriate.

[6] Defendant asserts that in denying the claim it relied not only on Detective Ferrucci's comments but also on the Death Certificate, the Police Accident Report, authored by a different officer, "the Autopsy Report, witness statements, New York Traffic Code, the Policy language, and applicable ERISA law." [#34 at 13]. However, it is undisputed that the exclusion regarding a misdemeanor or felony is the sole exclusion on which the

Motion that the process Defendant followed in evaluating the claim essentially allowed Defendant to "define the facts by making its own adjusters witnesses," which "unfairly favors the carrier, under circumstances where the insured cannot compel testimony of the very witnesses the insurance company quotes from." [#27 at 6].

Under an arbitrary and capricious standard of review, Plaintiff bears the burden of proof to prove that Defendant failed to act on a reasoned basis. In other words, and relevant to the case at hand, if the court employs an arbitrary and capricious standard of review, Plaintiff bears the burden of proof to show the existence of a conflict, and that any such conflict jeopardized the administrator's impartiality. *See Adamson v. Unum Life Insurance Co. of America,* 455 F.3d 1209, 1212 (10th Cir. 2006) (citations omitted). Indeed, under an arbitrary and capricious standard of review, the weight of a conflict of interest as a factor depends on the seriousness of the conflict. The conflict proves less important, "(perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decision making irrespective of whom the inaccuracy benefits." *Glenn*, 128 S. Ct. at 2351. The conflict "is given great weight where circumstances suggest a likelihood that it affected the benefits decision." *McNeal v. Frontier AG, Inc.*, 998 F. Supp. 2d 1037, 1041 (D. Kan. 2014) (citing *Foster v. PPG Industries, Inc.,* 693 F.3d 1226, 1232 (10th Cir. 2012).

This court recognizes Defendant's argument that in appealing the denial, Plaintiff did not provide contradictory statements or information from Detective Ferrucci, request

---

denial is based, and the court finds that Plaintiff has appropriately raised the issue of potential bias of the adjuster.

additional time to complete her appeal so as to provide information from Detective Ferrucci, or ask that Defendant speak again with Detective Ferrucci, [#34 at 5, 11], and that Plaintiff's counsel contacted and spoke with Detective Ferrucci only after the appeal process had concluded.[7]  However, Plaintiff clearly took issue with Defendant basing its denial on a criminal charge that was only anticipated.  *See* [#27-1].  And Defendant asserts no argument that in light of Plaintiff's correspondence and appeal of the denial, "steps were taken to…promote accuracy," such as holding a second conversation with Detective Ferrucci.  Additionally, for the reasons expressed herein, this court does not find that Plaintiff is seeking discovery into the merits of her claim but into whether the claim adjuster misrepresented Detective Ferrucci's comments, and whether any such misrepresentation was intentional.  *Cf. Kohut*, 710 F. Supp. 2d at 1152 ("This Court finds that, in the face of the Tenth Circuit's conflicted authority, the Court's apparent prohibition on extra-record discovery must be read as applying only to that discovery directed at uncovering additional evidence of a claimant's eligibility for benefits.").

This court finds that the limited discovery it permits with this Order is included in the extra-record discovery contemplated by the Tenth Circuit in *Murphy*.  And the court notes that while a plan administrator's decision will be upheld under an arbitrary and

---

[7] This court is not persuaded that *Karanda v. Connecticut Gen. Life Ins. Co.*, 158 F. Supp. 2d 192 (D. Conn. 2000), the case Defendant cites regarding Plaintiff's failure to question the accuracy of Detective Ferrucci's statement during the appeal process, is apposite.  *See* [#34 at 11].  The *Karanda* court passed on the defendant's motion for summary judgment, not a motion seeking discovery, and determined that the disputed issue as to whether the physician ever spoke with the defendant was immaterial, noting that its review was limited to the administrative record and the record showed "ample evidence" that plaintiff and her attorney "both knew that [defendant] claimed to have spoken to [the physician] about her ability to return to work, and it is undisputed that they failed to question the accuracy of that statement until well after [defendant] reached its final decision."  *Id.* at 199 n.5.

16

capricious standard of review so long as it has a reasoned basis, *Adamson*, 455 F.3d at 1212, "[i]ndicia of arbitrary and capricious actions include a lack of substantial evidence, a mistake of law, and bad faith." *Buchanan v. Reliance Standard Life Ins. Co.,* 5 F.Supp.2d 1172, 1180 (D. Kan. 1998) (citation omitted).[8]

## IV. Scope of Discovery

Plaintiff asks the court to open a forty-five day period of discovery to:

> allow deposition or other processes necessary to determine the validity of the Administrative Record as it presently applies to statements of the investigating officer which are based upon the insurance companies adjusters becoming witnesses [sic], and to further allow a deposition of a company representative to address bias and prejudice as it may affect the standard of review and for such other and further relief as the court and just and proper respectfully submitted.

[#27 at 10]. Defendant argues that to the extent the court allows discovery, a deposition of its "company representative" as "conflict discovery" is inappropriate, and that the requested discovery is generally not proportionate. [#34 at 12-13].

This court agrees that the discovery contemplated by Plaintiff is too broad. As this court understands the governing Tenth Circuit law, the dual role conflict of interest arising from an administrator's discretion to determine eligibility for benefits or construe

---

[8] If Judge Arguello undertakes an arbitrary and capricious standard of review, she may exercise her discretion to decline to consider the forthcoming discovery, or to give it only nominal weight. However, were Plaintiff not permitted to take the limited discovery discussed herein, there would be no record of the disparity between the claim adjuster's basis for denial and Detective Ferrucci's comments, and thus no record from which the court could consider or indeed weigh the conflict of interest in its abuse of discretion analysis. *See Murphy*, 619 F.3d at 1158 ("If the administrative record does not specifically address [the issues regarding conflict] and if we flatly prohibited the consideration and discovery of information outside the administrative record, the district court may not be able to make a fully informed analysis that properly weighs the conflict of interest"). If Judge Arguello undertakes a de novo standard of review, she may disregard the forthcoming evidence altogether if she finds that the evidence is not appropriate in light of the *Hall* factors.

17

policy terms does not in and of itself justify discovery. *See Adamson*, 455 F.3d at 1212 ("The fact that [defendant] administered and insured the group term life insurance portion of this plan does not on its own warrant a further reduction in deference."). Rather, the plaintiff must allege that the conflict of interest interfered with the claim determination. And Rule 26(b)(1) states that in determining what discovery is proportional, the court must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). *See Murphy*, 619 F.3d at 1162-63 (applying Rule 26(b)(1) to requests for discovery in ERISA matters).

I find that Plaintiff has set forth the necessary allegations of interference, but that the issue presented by the Motion for Discovery is a narrow one: did an inherent conflict of interest influence or cause the claim adjuster to misrepresent Detective Ferrucci's comments during the process of evaluating Plaintiff's claim. Accordingly, Plaintiff is not entitled to broad discovery regarding *possible* manifestations of conflicts of interest and will not be allowed to depose a company representative. Instead, Plaintiff is limited to a sixty minute deposition of Detective Ferrucci, and a sixty minute deposition of the claim adjuster who evaluated and denied Plaintiff's claim.[9] The scope of the depositions is limited to exploring Detective Ferrucci's statements to Defendant about any possible charges as to Mr. McClain had he survived the collision, if the adjuster accurately reflected those statements, and how the adjuster accounted for Detective Ferrucci's

---

[9] The correspondence attached to the Motion for Discovery indicates that the claim adjuster is David Macfadzen. *See, e.g.,* [#27-6 at 4].

18

statements within the determination of the underlying claim, for the purpose of determining if any bias existed. This court finds that limiting Plaintiff's request in this manner sufficiently addresses Defendant's arguments regarding proportionality, taking into particular consideration the Parties' relative access to the information, the Parties' resources, and the relevance of the discovery in resolving the issues as presented, and additionally acknowledges the potential burden on Defendant and the court in allowing additional discovery and extending the briefing deadlines, if necessary.

The Parties shall complete the depositions of Detective Ferrucci and the claim adjuster no later than **July 17, 2018**. And the Parties shall adhere to the briefing schedule set forth in the court's Scheduling Order, *see* [#22]. Either Party may move to supplement the Administrative Record on or before **August 1, 2018**, the deadline by which the Parties must file their opening briefs. This court finds that in maintaining the original deadlines set in this matter, it adequately safeguards the policy considerations underlying the statute, contrary to Defendant's concerns. *See Murphy*, 619 F.3d at 1164 ("[the trial court] must bear in the mind both the need for a fair and informed resolution of the claim and the need for a speedy, inexpensive, and efficient resolution of the claim.").

On the basis of the foregoing, **IT IS ORDERED** that:

(1) The Motion Requesting Discovery and Objection to Submission of Administrative Record [#27] is **GRANTED IN PART and DENIED IN PART**;

(2) Plaintiff is **GRANTED** leave to take the deposition of Detective Ferrucci, to last no longer than 60 minutes, and to take the deposition of the claim adjuster, to last no longer than 60 minutes, and shall take both depositions no later than **July 17, 2018**,

the Motion is otherwise **DENIED**;

(3)     Any motion to supplement the Administrative Record shall be filed on or before **August 1, 2018**; and

(4)     The previously set deadlines, *see* [#22] remain set.


DATED: June 26, 2018                    BY THE COURT:

                                        _____
                                        United States Magistrate Judge