IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 17-cv-02976-CMA-NYW

WANIKA HOWELL,

    Plaintiff,

v.

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON,

    Defendant.

_____

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
_____

This matter is before the Court on Defendant Liberty Life Assurance Company of Boston's Motion for Summary Judgment or, in the Alternative, Motion for Judgment on the Record (Doc. # 57) and Plaintiff's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 (Doc. # 59). Both motions have been fully briefed. (Doc. ## 61, 62, 65, 73, 76.) Based on the following reasons, the Court grants Defendant's Motion and denies Plaintiff's Motion.

## I.    BACKGROUND

This life insurance dispute arises out of a motorcycle collision that resulted in the death of Plaintiff Wanika Howell's son, Joel McClain ("Decedent"). On December 13, 2015, Decedent was operating a motorcycle headed eastbound on Sunrise Highway in Merrick, New York. (Doc. # 24-1 at 45.) As Decedent approached the intersection of

Sunrise Highway and Hewlett Avenue, a Lexus SUV traveling westbound on Sunrise Highway began to make a left turn onto Hewlett Avenue. Decedent collided with the SUV at a right angle and sustained fatal injuries as a result.

Witnesses described Decedent traveling at a high rate of speed immediately before the collision. *See, e.g.*, (*id.* at 63). Additionally, Decedent did not have a valid license to operate a motorcycle, and the registration plate displayed on the motorcycle had been issued for a different vehicle. After investigating the incident, Detective Gary T. Ferrucci concluded, *inter alia*, that "[o]peration of this vehicle by [Decedent] [was] neither reasonable nor prudent . . . ." (*Id.* at 48.) Detective Ferrucci later stated that Decedent would have been charged with reckless driving if he had survived the collision. (*Id.* at 6.)

At the time of the collision, Decedent was insured as Plaintiff's dependent under a Group Life Insurance Policy ("the Policy"), which Plaintiff had purchased from Defendant through her employer's Employee Retirement Income Security Act ("ERISA") welfare plan. *See* 29 U.S.C. § 1001, *et seq.* Defendant was the claims administrator, and pursuant to the terms of the Policy, Defendant had "the authority, in its sole discretion, to construe the terms of [the Policy] and to determine benefit eligibility . . . ." (Doc. # 24 at 51.)

The Policy offered both life and accidental death and dismemberment ("AD&D") benefits. Plaintiff filed claims for both types of benefits, and Defendant paid Plaintiff's life insurance claim in full. (Doc. # 24-1 at 132.) However, Defendant denied Plaintiff's claim for AD&D benefits.

The Policy provides AD&D benefits when a covered dependent "suffers a loss solely as the result of an accidental injury that occurs while covered," but various exclusions may preclude coverage if they apply to a claim. (Doc. # 24 at 31.) Relevant here, the Policy indicates that "[n]o benefits are payable for any loss that is contributed to or caused by . . . committing or attempting to commit a felony or misdemeanor . . . ." (*Id.* at 46.) After conducting an investigation, Defendant determined that the felony/misdemeanor exclusion applied to Plaintiff's claim because Decedent was driving recklessly at the time of the collision, which is a misdemeanor under New York law.

Plaintiff subsequently appealed the denial of AD&D benefits. However, on September 5, 2017, Defendant informed Plaintiff that it had considered Plaintiff's appeal and determined that the denial would be maintained. (*Id.* at 12.) Defendant also informed Plaintiff of her right to file a civil action challenging the adverse benefit determination under section 502(a) of ERISA. (*Id.* at 15.) This lawsuit followed.

## II. STANDARD OF REVIEW

When both parties move for summary judgment in an ERISA case, "summary judgment is merely a vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor." *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment and Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010) (internal quotation marks and citation omitted). As a preliminary matter, however, the Court must determine the appropriate standard to be applied to Defendant's decision to deny benefits. *Id.*

3

Where, as here, a "benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the decision is subject to an arbitrary and capricious standard of review.[1] *Dardick v. Unum Life Ins. Co. of Am.*, 739 F. App'x 481, 485 (10th Cir. 2018) (quoting *DeGrado v. Jefferson Pilot Fin. Ins. Co.*, 451 F.3d 1161, 1167 (10th Cir. 2006)).

Under the arbitrary and capricious standard, the administrator's decision need not be the only logical one or the best one; the decision will be upheld so long as it is "grounded on any reasonable basis." *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999). Thus, reviewing courts "need only assure that the administrator's decision falls somewhere on a continuum of reasonableness—even if on the low end." *Nance v. Sun Life Assurance Co. of Canada*, 294 F.3d 1263, 1269 (10th Cir. 2002). To determine if a decision falls somewhere on a continuum of reasonableness, courts look for "'substantial evidence' in the record to support the administrator's conclusion, meaning 'more than a scintilla' of evidence 'that a reasonable mind could accept as

---

[1] Plaintiff argues that, pursuant to Colo. Rev. Stat. § 10-3-1116(2 & 3), the applicable standard of review is *de novo*. (Doc. # 59 at 1–3.) Section 10-3-1116**(2)** provides, in pertinent part, that an insurance policy "issued in this state that offers health or disability benefits shall not contain a provision purporting to reserve discretion to the insurer, plan administrator, or claim administrator to interpret the terms of the policy, . . . or to determine eligibility for benefits." Section 10-3-1116**(3)** provides, in pertinent part, that an insurance policy "issued in this state shall provide that a person who claims health, life, or disability benefits, whose claim has been denied in whole or in part, . . . shall be entitled to have his or her claim reviewed de novo in any court with jurisdiction and to a trial by jury." However, the Court is persuaded by Judge Raymond Moore's thorough and well-reasoned analysis in *Shafer v. Metro. Life Ins. Co.*, 80 F. Supp. 3d 1244 (D. Colo. 2015). In *Shafer*, the court determined that because § 10-3-1116**(2)** "addresses insurance policies, contracts or plans which offer 'health or disability benefits,'" it is inapplicable to plans that involve life insurance, such as the one at issue in the instant case. *Id.* at 1254 n.3. Further, the court held that § 10–3–1116**(3)** "conflicts with ERISA's remedial scheme . . ., and thus, ERISA preempts Section 10-3-1116(3)." *Id.* at 1255.

sufficient to support a conclusion.'" *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1134 (10th Cir. 2011) (citation omitted).

However, "[i]n cases such as this one, where the same entity serves as the administrator and payor, an inherent, dual-role conflict of interest exists." *Loughray v. Hartford Grp. Life Ins. Co.*, 366 F. App'x 913, 923 (10th Cir. 2010) (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008)). Nevertheless, "[t]he existence of a dual-role conflict **does not alter the standard of review**, but [courts] weigh the conflict as one of many case-specific factors in determining whether the administrator's decision was an abuse of discretion." *Id.* (emphasis added) (citing *Glenn*, 554 U.S. at 115–16; *Holcomb v. Unum Life Ins. Co. of Am.*, 578 F.3d 1187, 1192 (10th Cir. 2009)). Thus, courts "employ a sliding scale approach in which the conflict is accorded more or less weight depending upon the seriousness of the conflict . . . ." *Id.*

Pursuant to the sliding scale approach, courts give dual-role conflicts "greater weight 'where circumstances suggest a higher likelihood that [the conflict] affected the benefits decision . . . .'" *Id.* (quoting *Glenn*, 554 U.S. at 117). On the other hand, a conflict "'should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy.'" *Holcomb*, 578 F.3d at 1193 (quoting *Glenn*, 554 U.S. at 117).

### III. DISCUSSION

Plaintiff argues that Defendant's dual-role conflict of interest substantially contributed to its denial of AD&D benefits. *See* (Doc. # 59 at 16–17). Additionally,

5

Plaintiff argues that Defendant's decision-making process was not based on substantial evidence. *See* (*id.* at 17). The Court will consider each issue in turn.

## A. WEIGHT ATTRIBUTED TO THE DUAL-ROLE CONFLICT OF INTEREST

Plaintiff's main argument regarding Defendant's conflict of interest relates to Detective Ferrucci's statement that Decedent would have been charged with reckless driving if he had survived the collision. According to Defendant's claim file for this case, Detective Ferrucci made the statement during a conversation with a claims adjuster—David MacFazden—during Defendant's investigation of Plaintiff's claim for AD&D benefits. Specifically, Mr. MacFazden noted that he spoke with Detective Ferrucci on April 6, 2017, and Detective Ferrucci "confirmed that [Decedent] would have been charged for [sic] reckless driving had he survived." (Doc. # 21-1 at 6.) Plaintiff asserts:

> This entire denial is based on a supposed communication between the adjuster and an investigating officer with no effort to document what was said, such that this whole denial comes down to the credibility of an adjuster who claims never to have written a confirming letter following a phone call in his life, and does not understand why people do things like that.

(Doc. # 59 at 16.)

Thus, Plaintiff effectively argues that Mr. MacFazden misrepresented his conversation with Detective Ferrucci, and Defendant's denial of benefits is built upon that false premise. Plaintiff presented the same argument to Magistrate Judge Wang in an effort to engage in discovery to ascertain whether or not the conversation in question took place. *See* (Doc. # 45) (Magistrate Judge Wang's Order on Motion Requesting Discovery). Plaintiff's counsel, Samuel Livingston, supported his argument with a letter he had written to defense counsel. (Doc. # 27-4.) In the letter, Mr. Livingston stated that

6

he personally spoke with Detective Ferrucci, who indicated that "**he never did state that [Decedent] would have been charged with reckless driving** under these circumstances." (*Id.* at 1) (emphasis added). Mr. Livingston also expressed his willingness to depose Detective Ferrucci, stating ". . . perhaps we can conduct a deposition to resolve this matter, which I hope is unnecessary as I believe the officer was cooperative and basically stated he had been misquoted in the past." (*Id.* at 2.)

Based on Mr. Livingston's representations, Magistrate Judge Wang permitted Plaintiff to conduct "a sixty minute deposition of Detective Ferrucci, and a sixty minute deposition of [Mr. MacFazden]." (Doc. # 45 at 18.) However, Magistrate Judge Wang expressed skepticism as to the veracity of Mr. Livingston's allegations, indicating that "[t]o the extent Plaintiff's counsel has misrepresented Detective Ferrucci's remarks in an effort to obtain the requested depositions, this court is confident that Defendant will raise any such issue with the court, if appropriate." (*Id.* at 14 n.5.)

Armed with an apparent "smoking gun" and the power to produce a checkmate argument showing Defendant's bad faith, Mr. Livingston chose **not** to take Detective Ferrucci's deposition.[2]

---

[2] Mr. Livingston cites "the time, expense, and logistics" of taking Detective Ferrucci's deposition as an explanation for his decision not to take the deposition. (Doc. # 63 at 2.) However, Mr. Livingston's justification is difficult to reconcile with: Mr. Livingston's prior representations expressing his willingness to take Detective Ferrucci's deposition, *see* (Doc. # 27-4 at 2); the importance of the information Detective Ferrucci allegedly had; Mr. Livingston's decision to take the deposition of Mr. MacFazden despite the fact that Detective Ferrucci's testimony appeared to be substantially more important; and the fact that modern technology can significantly reduce the costs associated with long-distance depositions, *see, e.g.*, *Shell v. Henderson*, No. 09-cv-00309-MSK-KMT, 2013 WL 1124693, at *1 (D. Colo. Mar. 18, 2013) (allowing deposition of out-of-state deponent to be taken via Skype).

Instead, Mr. Livingston decided to utilize the letter that **he wrote** to assert the truth of Detective Ferrucci's alleged statement to Mr. Livingston as the factual basis for his argument that Defendant's decision-making process was arbitrary and capricious. (Doc. # 59 at 12–13) (Plaintiff's Motion for Summary Judgment) (". . . discussions between Plaintiff's council [sic] and detective Ferrucci revealed that the Detective [sic] informed the adjuster that charging Mr. McLean [sic] with reckless driving was only a possibility. Plaintiff's counsel then confirmed that discussion by correspondence to the officer." (citing Mr. Livingston's letter to defense counsel)). The story of Mr. Livingston's letter reached its climax when, in response to Defendant's Motion to Strike the letter, Mr. Livingston stated that "[t]he letter between Plaintiff's counsel and Detective Ferrucci was generated for the **sole purpose** of the [discovery] Motion filed earlier and ruled upon by Magistrate Wong [sic]." (Doc. # 66 at 3) (emphasis added). However, that statement fails to take into account that Mr. Livingston had relied on the letter to support a crucial argument in the Motion for Summary Judgement that he filed a month earlier.

Thus, although Mr. Livingston's strategy was intended to illustrate a misrepresentation at the heart of Defendant's decision-making process, his strategy served only to expose his own misrepresentations. Therefore, the Court attributes no weight to Mr. Livingston's allegations regarding Detective Ferrucci's statements.

Alternatively, Plaintiff argues that Defendant's decision-making process was biased. Specifically, Plaintiff argues that Mr. MacFazden: did not consider potentially relevant information such as the opinion of other police officers involved in the investigation of the collision; did not question why the other driver did not receive a

8

citation; and did not send a letter to Detective Ferrucci to confirm the statements Detective Ferrucci made on the phone. (Doc. # 59 at 17–19.) However, Plaintiff has failed to demonstrate that Defendant's dual-role conflict of interest was an important factor in Defendant's decision to deny benefits.

A plaintiff may show that conflict of interest played a significant role in an administrator's decision-making process if the plaintiff establishes that the administrator "ha[d] a history of biased claims administration." *Glenn*, 554 U.S. at 117. For example, a plaintiff could show that an administrator "gives a bonus for administrators who denied benefits to every 10th beneficiary." *Id.* at 123. On the other hand, administrators can reduce the impact of a conflict by, for example, "walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits." *Id.* at 117.

In the instant case, Plaintiff's arguments regarding Mr. MacFazden's investigation, at best, raise a question of whether Defendant's ultimate decision was based on sufficient evidence. However, with the exception of Mr. Livingston's questionable letter, Plaintiff has not produced any evidence that Mr. MacFazden was actually biased or that Defendant's dual-role as administrator and payor had any impact on Defendant's decision to deny benefits.

Moreover, Defendant has presented evidence that it took steps to minimize the impact of its dual-role and promote accuracy in its claim determination process. Specifically, Defendant implemented an appeal procedure, according to which Plaintiff's initial claim denial was reviewed by a consultant who had no prior role in Plaintiff's

claim, and Defendant encouraged Plaintiff submit additional information in support of her claim. (Doc. # 57 at 9–11.) In sum, although the Court will consider Defendant's inherent conflict of interest as a factor in determining whether its decision was arbitrary and capricious, the Court attributes little weight to the conflict in making that determination.

**B.      WHETHER THE DENIAL OF BENEFITS WAS ARBITRARY OR CAPRICIOUS**

Defendant denied Plaintiff's claim based on the Policy's felony/misdemeanor exclusion. (Doc. # 24-1 at 30.) Pursuant to New York law:

> Reckless driving shall mean driving or using any motor vehicle, motorcycle or any other vehicle propelled by any power other than muscular power or any appliance or accessory thereof in a manner which unreasonably interferes with the free and proper use of the public highway, or unreasonably endangers users of the public highway. Reckless driving is prohibited. **Every person violating this provision shall be guilty of a misdemeanor**.

N.Y. VTL § 1212. New York courts have explained that "[r]eckless driving . . . means the running or operation of an automobile under such circumstances as to show a reckless disregard of the consequences." *People v. Leontiev*, 956 N.Y.S.2d 832, 838 (Dist. Ct. 2012) (citation omitted). "Although 'unreasonableness' is a necessary constituent of the crime . . . sufficient facts from which the characterization may be inferred that defendant's operation of this automobile 'unreasonably' interfered with the free and proper use of the highway, and 'unreasonably' endangered users thereof," will "sustain the sufficiency of the accusatory instrument." *Id.* (citation omitted).

Based on its analysis of the facts surrounding the collision, Defendant reasonably concluded that Decedent's operation of his motorcycle constituted reckless driving.

Without providing an exhaustive list, the Court notes that the following facts were material to Defendant's decision that Decedent was operating the motorcycle recklessly:

- Four witnesses recalled that Decedent was traveling unreasonably fast. One witness, Catherine Riccards, was beginning to drive through an intersection when Decedent passed her on her right side. Ms. Riccards recalled that Decedent, "took off at a very high speed." (Doc. # 24-1 at 63.) Ms. Riccards saw the Lexus SUV making a left turn at the next intersection, and she "felt that there was going to be an accident because the motorcycle was going so fast." (*Id.*);

- Detective Ferrucci investigated the incident and noted that Decedent's operation of the motorcycle at the time of the collision was "neither reasonable nor prudent . . . ." (*Id.* at 48.) Detective Ferrucci's conclusion was based, in part, on the fact that Decedent was operating the motorcycle without a valid license. (*Id.*); and

- Detective Ferrucci stated that Decedent would have been charged with reckless driving if he had survived the collision. (*Id.* at 6.)

The foregoing facts constitute substantial evidence, which "a reasonable mind could accept as sufficient to support [the] conclusion" that Decedent was operating the motorcycle in a manner that was unreasonably dangerous or reckless. *Eugene S.*, 663 F.3d at 1134. Therefore, because Defendant's claim determination was reasonable and based on substantial evidence, its determination was neither arbitrary nor capricious.[3]

## IV.    CONCLUSION

Based on the foregoing, the Court ORDERS as follows:

- Plaintiff's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 (Doc. # 59) is DENIED;

---

[3] Plaintiff argues that Defendant's decision regarding its reckless driving determination is faulty because Decedent was never charged with or convicted of a crime. *See* (Doc. # 62 at 3). However, "a conviction based on proof beyond a reasonable doubt is not needed" in order to trigger an exclusion in an AD&D policy based on criminal conduct. *See, e.g.*, *Kay-Woods v. Minnesota Life Ins. Co.*, 622 F. Supp. 2d 704, 709 (S.D. Ill. 2009).

- Defendant's Motion for Summary Judgment or, in the Alternative, Motion for Judgment on the Record (Doc. # 57) is GRANTED. The Clerk of the Court respectfully is directed to enter judgment in favor of Defendant Liberty Life Assurance Company of Boston and against Plaintiff Wanika Howell;
- Defendant's Motion Opposing Supplementation of the Administrative Record (Doc. # 58) and Defendant's Motion to Strike Letter from Plaintiff's Counsel (Doc. # 60) are both DENIED AS MOOT.

DATED: September 25, 2019

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge